**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS AMEIKA**, *et al.*, : | |
| : | |
| **Plaintiffs** : | **CIVIL ACTION NO. 3:12-1460** |
| : | |
| **v.** : | |
| : | **(JUDGE MANNION)** |
| **KEITH MOSS** *et al.*, : | |
| : | |
| **Defendants** : | |

# M E M O R A N D U M

Pending before the court is the motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) filed by defendants Keith Moss, Nicholas A. Lohman, Lois Morreale, Audrey Marcinko, Frank Groblewski, and the Borough of Duryea ("Duryea Defendants"). (Doc. No. 18).[1] For the following reasons, the motion will be **GRANTED** and Counts One and Two of the complaint **DISMISSED**.

## I. BACKGROUND

This case arises from events surrounding flooding which occurred in Duryea, Pennsylvania and other nearby locations in Luzerne County as a

---

[1] The docket incorrectly indicates that the Duryea Borough Sewer Authority filed the motion for judgment on the pleadings. Defendants Duryea Borough Sewer Authority and Lower Lackawanna Valley Sanitary Authority ("Sewer Authority defendants") are not parties to the instant motion for judgment on the pleadings.

result of Hurricane Irene on September 8, 2011. (Doc. No. 1, at ¶ 8). The thirty-four plaintiffs are residents of Duryea who allege that at around seven o'clock P.M. on that day, the waters at the confluence of the Susquehanna and Lackawanna rivers caused serious property damage to 200-400 properties in Duryea. (Id., at ¶¶ 8, 14).

Plaintiffs allege that in February 2010, the Luzerne County Emergency Management Agency ("EMA") had enlarged the flood plain in Duryea because of changes to local levees, which were expected to increase the effect of potential flooding on Duryea. (Id., at ¶ 9). On the morning of the flooding, the Lower Lackawanna Sanitary Authority ("LLSA") and EMA ordered evacuation of residents in the enlarged flood plain, a day after county officials had ordered evacuation of properties which had been flooded by Hurricane Agnes in 1972. (Id., at ¶ 10).

Plaintiffs allege that the individual defendants were informed of the expected high crest of the rivers by five o'clock on September 8, so that they would be able to sandbag areas which were likely to be flooded. (Id., at ¶ 11). Defendants allegedly ignored an emergency action plan which called for the placing of five thousand sand bags, leaving seventy tons of available sand and five thousand sand bags unused, and turned away volunteers. (Id., at ¶¶ 12,13,16). Specifically, defendants Mayor Keith Moss and council members Audrey Marcinko and Frank Groblewski were offered supplies and equipment to help with laying sand bags, but did not accept that assistance. (Id., at ¶ 13).

2

Plaintiffs claim that Mayor Moss did build a dirt dike, but that the dike caused flooding to three properties. (Id.)

Plaintiffs further claim that before the flooding, the borough had not accepted a grant to construct levees from the U.S. Environmental Protection Agency ("EPA") and Army Corps of Engineers, despite being aware of the potential for flooding since 1972 when Hurricane Agnes caused widespread property damage. (Id., at ¶¶ 20-21). They also claim that the LLSA and Duryea Sewer Authority failed to shut off valves carrying sewage despite having knowledge that flooding was imminent, resulting in property damage from sewage backup. (Id., at ¶¶ 26,27,31,32).They also allege that a dike was left incomplete, which left a two-block gap necessitating sandbagging, and that the failure to sandbag the gap facilitated flooding by water from the Lackawanna River. (Id., at ¶ 14).

Plaintiffs bring the instant case in response to these alleged failures of defendants Duryea Mayor Keith Moss, Chief of Police Nicholas A. Lohman, Borough Manager Lois Morreale, Borough Council Chairperson Audrey Marcinko, council member Frank Goblewski, and Duryea Borough to properly prepare for and respond to the flooding, claiming that they resulted in deprivation of their constitutionally protected property interests pursuant to 42 U.S.C. §1983 (Counts One and Two of the complaint). Plaintiffs bring state law tort claims against the Duryea Borough Sewer Authority and the LLSA (Counts Three and Four). The Duryea defendants now move for judgment on the

pleadings.

## II. STANDARD OF REVIEW

<u>Judgment on the Pleadings Standard of Review</u>

The standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that for deciding a motion to dismiss pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). In deciding the defendant's motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (*citing* Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (*citing* Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662 (2009)

4

(holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face) (*quoting* Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

In deciding the defendant's motion, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. *See* Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### §1983 Standard of Review

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law.

5

Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). To state a claim under §1983, the plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423. Liability under §1983 is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006) (*citing* Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).

A municipality is a "person" for purposes of §1983. Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of respondeat superior. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights. Id. Rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. The plaintiff bears the burden of identifying the

policy or custom. Id.

## III. DISCUSSION

Plaintiffs allege that their "constitutionally protected property interests" were violated. (Doc. No. 1, at ¶ 18). Their complaint does not indicate, however, what particular constitutional rights they are alleging were violated.[2] Defendants argue that plaintiffs' complaint fails to allege that any protected constitutional or federally-protected right was violated, and that instead the complaint actually contains negligence claims disguised as constitutional ones. (Doc. No. 19, at 4). On its face, the complaint does appear to be one for negligence; plaintiffs claim that defendants have "responsibilities," that those responsibilities were breached, and that those breaches caused damage to plaintiffs' properties.

While the complaint is not clear as to the constitutional right allegedly at issue, the court will construe plaintiffs' claim against the Duryea defendants as one for substantive due process violations under the "state created danger"

---

[2]In their response briefs, (Doc. No. 22, Doc. No. 29), plaintiffs indicate that their claims are for Duryea officials' violations of the Stafford Act, 42 U.S.C. §5121 *et seq.*, which caused a substantive due process violation under the "state created danger" theory of liability. To the extent that these arguments are intended as amendments to the complaint, they will not be considered, as "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Heim v. York County Prison, 2013 WL 1414638, at *6, n. 7 (M.D.Pa. 2013).

theory, as plaintiffs allege that the Duryea defendants' lack of action led to the flooding of their properties.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. Although the Fourteenth Amendment imposes no affirmative obligation upon a state to protect its citizens, DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989), under the state created danger doctrine, a state is responsible for the protection of its citizens where its actions create or enhance the danger to a citizen from the state or a third party. Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir. 2006) (*citing* Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir.1996). To state a claim under the state-created danger theory, a plaintiff must establish four elements. Id. (*citing* Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)).

First, the plaintiff must show that "the harm ultimately caused was foreseeable and fairly direct." Second, the plaintiff must show that the defendant's conduct shocks the conscience. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (*citing* Dent v. West Virginia, 129 U.S. 114, 123 (1889)); *see* County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Kaucher, 455 F.3d at 425. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (internal citation omitted); Kaucher, 455 F.3d at 425. In a substantive due

8

process claim, official conduct is egregious only when it "shocks the conscience and violates the decencies of civilized conduct." Lewis, 523 U.S. at 846-47 (internal citation omitted); Kaucher, 455 F.3d at 425. There is no definitive standard for "shocks the conscience," and the determination of whether conduct shocks the conscience entails an analysis of the facts in a particular case. Kaucher, 455 F.3d at 425-26; see Lewis, 523 U.S. at 847 ("[T]he measure of what is conscience shocking is no calibrated yard stick."); see Kaucher, 455 F.3d at 426. Negligently inflicting harm is categorically insufficient to constitute a constitutional violation, while behavior intended to injure in an unjustifiable way is the sort of action most likely to shock the conscience. Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006).

In a case involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n.10; Kaucher, 455 F.3d at 426-27 & n.4. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Kaucher, 455 F.3d at 427 n.4.

Third, the plaintiff must show that he had a relationship with the defendant "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." Kaucher, 455 F.3d at 431.

Finally, the plaintiff must show that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Id. "But a specific and deliberate exercise of state authority . . . is not sufficient. There must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" Id. (*quoting* Bright, 443 F.3d at 281.) The defendant's action must be the "but-for" cause of the plaintiff's injury. Id. (*citing* Smith, 318 F.3d at 510).

In this case, the failure to fill sandbags and to take up assistance in the form of supplies and volunteers does not constitute an affirmative act. Indeed, the complaint almost exclusively alleges "inaction" of the Duryea defendants. The failure to fill sand bags cannot have left citizens more vulnerable than if the state had not acted. Unfortunately, the fact is that the damaged homes at the heart of this action are located near two rivers, and those rivers can flood when there is heavy rain. Plaintiffs admit as much themselves by referring to the 1972 flooding from Hurricane Agnes. The court appreciates that the flooding has caused extensive property damage and hardship for the plaintiffs. However, the danger of such flooding cannot be attributed to the government, and plaintiffs do not allege facts sufficient to show that the alleged inaction was a "but for" cause of the damage to their properties. While the plaintiffs may have pleaded facts that are consistent with a negligent lack of precaution on

10

the part of Duryea defendants, they have not pleaded that the borough and its officials took affirmative actions which placed the plaintiffs' properties in more danger than they otherwise would have been in.

Moreover, the inaction alleged in the complaint does not constitute conduct so egregious that it shocks the conscience. Local governments must decide how to allocate their resources, even when they are aware of specific dangers. Ramos-Pinero, 453 F.3d at 54 (finding that failure to place a cover on a manhole in an area prone to flooding and in a school zone did not shock the conscience). Deciding how to use those resources sometimes occurs during times of urgency, "such as heavy rains and flooding." Id. It may have been negligent not to allocate time to filling and placing sand bags after being informed that flooding was likely, or not to accept aid, but what may be a lack of good judgment is not, in this case, a constitutional violation.

The complaint does allege that the "only action taken" by any defendant was the building of a dirt dike by defendant Moss which caused flooding to the homes of three plaintiffs: Paula Ward-Boyko, Jason Matika, and Diane Orlowski. (Doc. No. 1, at ¶ 13). There are no further allegations about that affirmative act, and there is no showing that it was egregious enough to shock the conscience. While the building of the dike may have, as the complaint alleges, caused flooding to three properties, there is no allegation that it was built with the intent to, or with knowledge that it would, harm any property. The building of this particular dike may have been negligent, but the complaint is

11

insufficient to support a claim that it created a constitutional violation.

"The Due Process Clause is simply not implicated" by negligence of an official causing unintended loss of life, liberty, or property. Brickell v. Clinton County Prison Bd., 658 F.Supp.2d 621, 929 (M.D.Pa. 2009)(*quoting* Daniels v. Williams, 474 U.S. 327, 328 (1986). As an inspection of the complaint reveals that the allegations therein are negligence claims disguised as claims for a constitutional violation, there is no claim under §1983. The court will **DISMISS** Counts One and Two of the complaint, which are the constitutional claims against the Duryea defendants. The Court denies plaintiffs leave to amend their complaint because to do so would be futile. The court can see no possibility of a viable constitutional or other federal claim, including one pursuant to the Stafford Act, 42 U.S.C. §5121, *et seq*.

In this circuit, no private right of action under the Stafford Act has been found. *See* Duffy v. Kent County Levy Court, Inc., 2011 WL 748487 (Feb. 23, 2011 D.Del.); *but see* Diversified Carting, Inc. v. City of New York, 423 F.Supp.2d 85 (S.D.N.Y. 2005)(implicitly determining that private individual could sue federal agency under certain circumstances). But regardless of whether there is a private right of action, the Stafford Act is inapposite here. The Act deals with how the federal government can provide assistance to local governments in preparing for and responding to disasters. A review of the Act by the court reveals that it imposes obligations not on state and local governments, but on FEMA and the federal government. *See* 42 U.S.C.

§5121; *see also* Diversified Carting, Inc., 423 F.Supp.2d at 94-96 (Act does not provide right of action against *non-federal* governmental entities).

Because the court determines that there is no constitutional violation adequately pleaded in the complaint, it will not reach the issue of qualified immunity, raised by defendants in their brief in opposition. (Doc. No. 19).

Therefore, Counts One and Two of the complaint, (Doc. No. 1), are **DISMISSED** with prejudice. As the counts over which the court has original jurisdiction have been dismissed, the court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(c)(3). Accordingly, Counts Three and Four of the complaint are **DISMISSED** without prejudice to re-filing in state court. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 1, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-1460-01.wpd